IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

TIME & SECURITY MANAGEMENT, INC.,
ALLIED INDUSTRIAL ELECTRONICS,
and STEPHANIE COLE, as trustee for the
ESTATE OF TIME & SECURITY
MANAGEMENT, INC., d/b/a ALLIED
INDUSTRIAL ELECTRONICS,

    Plaintiffs,

v.                                                                No. 02-2417 B

PITTWAY CORPORATION, HONEYWELL
CORPORATION and NORTHERN
COMPUTERS, INC.,

    Defendants.
_____

ORDER GRANTING THIRD-PARTY DEFENDANT'S MOTION TO DISMISS
THIRD-PARTY COMPLAINT
_____

    Plaintiffs, Time & Security Management, Inc., d/b/a Allied Industrial Electronics ("Allied"), and Stephanie Cole, Trustee for the Estate of Allied, brought this action for damages arising from a business transaction between the Third-Party Plaintiff, Charles Beyer ("Beyer" or "Third-Party Defendant"), President of Allied, and the Defendants/Third-Party Plaintiffs, Pittway Corporation, Honeywell Corporation, and Northern Computers, Inc. (collectively referred to as "Pittway" or "Third-Party Plaintiffs") in which Allied purchased electronic entry access systems from the Defendants for installation in other businesses. In their complaint, Plaintiffs allege that, upon installation, the access systems failed and, as a result, Allied "sustained business losses, lost customers, breached contracts with other entities, and was ultimately forced into bankruptcy."

1

(Amend. Compl. ¶¶ 44.) Allied maintains that Pittway is solely responsible for its bankruptcy and seeks to recover damages for all injuries sustained as both a direct and indirect result.

Charles Beyer was originally a named plaintiff in this action, but was dismissed by order of this Court on December 22, 2003 on grounds that he lacked standing in his individual capacity to pursue claims against Pittway. On April 2, 2004, Pittway moved to file a third-party complaint against Beyer alleging that, rather than any actions by it, Allied's bankruptcy resulted from negligence and fraud committed by Beyer while acting as President of the company. Reversing the decision of the magistrate judge, this Court held that impleader of Beyer pursuant to Rule 14(a) of the Federal Rules of Civil Procedure was proper and granted Pittway's motion to file a third-party complaint on December 2, 2004. Before the Court is the motion of the Third-Party Defendant to dismiss the complaint on grounds that impleader is not proper under Fed. R. Civ. P. 14(a), Federal Rules of Civil Procedure because the Third-Party Plaintiffs have not stated a cause of action under Tennessee law for contribution or indemnity. For the reasons stated below, the motion is GRANTED.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted.[1] See Fed. R. Civ. P. 12(b)(6). The Rule requires the Court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d

---

[1] In the instant motion, Beyer does not state the basis on which he seeks to dismiss the third-party complaint. However, because the motion is styled as a "Motion to Dismiss" and maintains that dismissal is proper on grounds that Pittway failed to demonstrate a viable claim for indemnity or contribution under Tennessee law, the Court will treat the motion as one for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Contributing to this conclusion, the Court notes that the Third-Party Defendants responded to the instant motion as one for relief under Rule 12(b)(6).

416, 421 (6th Cir. 1998). "A complaint need not anticipate every defense and accordingly need not plead every response to a potential defense." Memphis, Tenn. Area Local, Am. Postal Workers Union v. Memphis, 361 F.3d 898, 902 (6th Cir. 2004). The Court's narrow inquiry on a motion to dismiss under Rule 12(b)(6) "is based upon whether 'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." Osborne v. Bank of Am., Nat'l Ass'n, 234 F.Supp.2d 804, 807 (M.D. Tenn. 2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *overruled on other grounds*, Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

Rule 14(a) provides that "[a]t any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." FED. R. CIV. P. 14(a). In its order of December 3, 2004, this Court determined that the Third-Party Plaintiffs satisfied the low procedural threshold for motions filed under Rule 14(a). However, in so holding, the Court noted that the viability of the claims alleged in the third-party complaint were dependent on the substantive law of contribution and indemnity in Tennessee. It is on the merit of those claims which Beyer's motion seeks dismissal of the third-party complaint, and to which the Court now turns.

I. Contribution

In response to the motion to dismiss, Pittway maintains that it has properly stated a claim under Tennessee law for contribution, and further, that failure to allow such a claim would result in injustice. In McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992), the Tennessee Supreme Court adopted the principles of comparative fault and, in so holding, limited the availability of contribution

as a remedy.² McIntyre, 833 S.W.2d at 58. As the court reasoned, under comparative fault, "a particular defendant will . . . be liable only for the percentage of a plaintiff's damages occasioned by that defendant's negligence, [thus,]situations where a defendant has paid more than his 'share' of a judgment will no longer arise." Id. at 58.

However, McIntyre did not "completely abolish the remedy of contribution." Bervoets v. Harde Ralls Pontiac-Olds, Inc., 891 S.W.2d 905, 907 (Tenn. 1994). In General Electric Co. V. Process Control Co., 969 S.W.2d 914 (Tenn. 1998), the Tennessee Supreme Court clarified that Tennessee allows a right of contribution in three limited circumstances, including: (1) cases in which the cause of action arose, suit was filed, and parties made irrevocable litigation decisions prior to the judicial adoption of comparative fault in McIntyre; (2) "cases in which joint and several liability continues to apply under doctrines such as the family purpose doctrine, cases in which tortfeasors act in concert or collectively with one another, cases in which the doctrine of *respondeat superior* permits vicarious liability due to an agency-type relationship, or in the 'appropriate' products liability case;" or (3)"appropriate case[s]" in which "fairness demands." General Elec. Co., 969 S.W.2d at 916(internal citations omitted); see also Ferguson v. Fowler, 18 Fed. Appx. 372, 375 (6th Cir. 2001). Rather than a catch-all category which can be utilized to defeat the concept of comparative fault, the third circumstance applies only where the failure to permit contribution would impose an injustice. General Elec. Co., 969 S.W.2d at 916.

Pittway asserts that its cause of action against Beyer for contribution should be allowed

---

² See Owens v. Truckstops of America, 915 S.W.2d 420, 425, n.7 (Tenn. 1996) ("The term 'comparative fault' is defined as those principles which encompass the determination of how to apportion damage recovery among multiple or joint tortfeasors according to the percentage of fault attributed to those actors after reduction for the plaintiff's percentage of negligence.") (internal quotations omitted).

under the third circumstance set forth in General Electric. Specifically, it contends that because Beyer's negligence and fraud, at a minimum, contributed to the injuries sustained by Allied, Pittway should be permitted to seek contribution for any amount for which it is held liable. Further, the Third-Party Defendants maintain that, because Beyer, a creditor of Allied's bankruptcy estate, is financing the litigation against Pittway, Allied's Trustee will not bring suit against him. According to Pittway, fairness demands that the contribution action be permitted to ensure that Beyer is held for his wrongdoing and that the maximum potential recovery is obtained for the bankruptcy creditors. In support of its position, the Third-Party Defendants cite Owens v. Truckstops of America, 915 S.W.2d 420 (Tenn. 1996) and Bervoets, 891 S.W.2d at 907.

In Owens, a case decided prior to General Electric, the Tennessee Supreme Court found that fairness demanded permitting a restaurant owner to pursue a contribution claim against the manufacturer and distributor of a stool on which a patron of the restaurant was injured and for which injuries the patron subsequently sued the restaurant. Owens, 915 S.W.2d at 422-23. However, unlike the facts in the instant case, the cause of action in Owens arose prior to the Tennessee Supreme Court's holding in McIntyre and the Tennessee legislature's adoption of Tennessee Code Annotated § 20-1-119.[3] Thus, at the time that the patron's suit was filed, comparative fault principles did not apply and, even if the restaurant was not solely responsible for the patron's injuries, he had the right to obtain a full recovery for his damages upon proof that the restaurant's negligence proximately caused or contributed to them. Id. at 424.

During the pendency of the suit, the decision in McIntrye was issued. In attempt to ensure

---

[3] Tennessee Code Annotation § 20-1-119 permits a plaintiff "a limited time within which to amend a complaint to add as a defendant any person alleged by another defendant to have caused or contributed to the injury, even if the statute of limitations applicable to the plaintiff's cause of action against the added defendant has expired." Owens, 915 S.W.2d at 427; Tenn. Code Ann. § 20-1-119.

complete recovery, the patron attempted to join the manufacturer and distributor in the suit. Id. at 423-24. However, the statute of limitations on the patron's claims against the manufacturer and distributor of the stool had expired. Id. at 424. Because the effective date of Tennessee Code Annotated § 20-1-119 was subsequent to his cause of action against the restaurant, it could not be used to revive his claim against the manufacturer and distributor. Id.

> Since the plaintiff cannot recover from [the manufacturer] or [the distributor] damages which may be attributable to them, he may be denied a full recovery unless he is allowed to recover all of his damages from [the restaurant]. However, this could constitute an injustice to [the restaurant], unless [the restaurant] can assert third-party claims against [the manufacturer] and [the distributor].

Id. at 427. Because the claim for contribution would create the same equitable results as would have been accomplished if the parties' rights could be determined in accordance with principles of comparative fault, the court concluded that the restaurant should be permitted to seek contribution from the manufacturer and distributor. Id. at 430.

Similar to Owens, the cause of action in Bervoets also arose prior to the adoption of comparative fault. Bervoets, 891 S.W.2d at 906. In that case, the plaintiff, Bervoets, was injured while a passenger in a car operated by Jackson. Bervoets sued Jackson, a minor, and his parents, the owners of the car, who, in turn filed a third-party claim for contribution against a bar, Adanac, Inc., that unlawfully served alcohol to Jackson prior to the wreck. Id. Thereafter Jackson and his insurer entered into a settlement agreement with Bervoets in which he released all claims against the defendants. Id. After the settlement, the insurer brought a third party action for contribution against the bar and during the course of the litigation, McIntyre was decided. Id. As explained in Owens,

> [t]he holding in Bervoets was that under comparative fault, Jackson and Adanac, Inc. were not jointly and severally liable to the plaintiff, but, Jackson, who had paid the plaintiffs' damages in full, would be allowed, *in that transitional case*, to assert a claim for contribution against Adanac, Inc. so that liability would be assessed . .

6

. according to the percentage of fault attributable to each of the defendants.

Owens, 915 S.W.2d at 429 (emphasis added) (internal quotations omitted). Otherwise, Jackson, who paid the plaintiff's damages in full under a joint and several liability regime which permitted suits for contribution, would not be permitted to seek contribution simply because of the change in law during the course of the litigation. Owens made clear that the transitional timing of the case was significant to the court's holding, noting that

> [h]ad the plaintiff's cause of action in Bervoets arisen subsequent to the adoption of comparative fault, Jackson, in an effort to reduce the extent of his liability, would have alleged in his answer that Adanac, Inc. caused or contributed to the damages, and the plaintiff, on pain of recovering less than full damages, would have amended his complaint pursuant to Section 20-1-119 to assert a claim against Adanac, Inc. Thus, the purpose of comparative fault, the assessment of liability in proportion to fault, would have been accomplished without the proceeding to enforce contribution, which was made necessary in Bervoets because the time within which the plaintiff could assert a claim against Adanac, Inc. directly had expired when McIntyre was decided.

Owens, 915 S.W.2d at 429.

Applying the logic of these cases to the instant matter, the Court concludes that this is not an appropriate case where fairness demands that the contribution claim be allowed because application of comparative fault will not result in an injustice. General Elec. Co., 969 S.W.2d at 916; Smith v. Methodist Hospitals of Memphis, 995 S.W.2d 584, 588 (Tenn. Ct. App. 1997). Under comparative fault principles, Pittway will only be held liable for the percentage of Allied's damages occasioned by its own wrongdoing. McIntyre, 833 S.W.2d at 58. At trial, Pittway will be permitted to assert the apportionment of fault between it and Beyer. If, as alleged by Pittway in the third-party complaint, the trier of fact finds that Beyer is jointly or wholly responsible for the injuries sustained by Allied, the percentage of fault attributed to Pittway will be reduced

accordingly. Thus, it should be of no import to Pittway that Allied has chosen not to amend its complaint under Tennessee Code Annotated § 20-1-119 to state a cause of action against Beyer. See Carroll v. Whitney, 29 S.W.3d 14, 21 (Tenn. 2000) (citing Estate of Hunter v. General Motors Corp., 729 So.2d 1264, 1273 (Miss. 1999) ("It would be patently unfair in many cases to require a defendant to be dragged into court for the malfeasance of another and to thereupon forbid the defendant from establishing that fault should properly lie elsewhere."). Under comparative fault, the loss of recovery for any liability attributed by the trier of fact to Beyer, a nonparty, against whom Allied had a cause of action, but either failed or was unable to assert it, will be born, not by Pittway, but by Allied. Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 83 (Tenn. 1996) (citing Voltz v. Ledes, 895 S.W.2d 677 (Tenn. 1995).

The conflict of interest cited by Pittway does not alter the analysis applied here. In Smith v. Methodist Hospitals of Memphis, the Tennessee Court of Appeals rejected a similar argument where the plaintiff failed to include a party against which it had a claim, purportedly in exchange for that party's assistance in proving the defendant's liability. Smith, 995 S.W.2d at 590. The defendant argued that "a situation in which a plaintiff and defendant are working together to attempt to secure an inappropriate allocation of fault is exactly the sort of situation in which fairness demands that an action for contribution be held appropriate." Id. Unlike Owens and Bervoets, the facts of Smith did not present a situation in which the plaintiff was unjustly forced to suffer a loss of recovery because of the application of comparative fault to the circumstances. The loss of recovery the plaintiff would suffer by not bringing a party who bore some portion of the liability into the action was not an injustice, but rather, her strategic choice. Id. at 591. "It is basic to our system of justice that in civil actions the plaintiff is in control of her own case and can proceed as she sees

fit." Id. Accordingly, where, as here, the application of comparative fault will not result in injustice, Allied may choose who to sue, but consequently, must bear the loss of recovery upon failure to join liable parties.[4]

## II. Indemnity

"The right to indemnity rests upon the principle that everyone is responsible for the consequences of his own wrong, and, if another person has been compelled to pay the damages which the wrongdoer should have paid, the latter becomes liable to the former." Southern Coal and Coke Company, Inc. v. Beech Grove Mining Company, Inc., 381 S.W.2d 299, 302 (Tenn. Ct. App. 1963). To further this principle, "indemnification requires the complete shifting of liability for loss from one person to another." Winter v. Smith, 914 S.W.2d 527, 541(Tenn. Ct. App. 1995). An obligation to indemnify may be either express or implied. First Nat'l Bank of Chicago v. Cumberland Bend Investors, L.P., No. M2000-00001-COA-R3-CV, 2002 WL 31835693, *3 (Tenn. Ct. App. Dec. 19, 2002). An express indemnity obligation arises from a contract between the parties. Id. In contrast, "implied indemnity obligations, whether called equitable or contractual, are imposed by law without the consent or agreement of the parties . . . when the obligation is a necessary element of the parties' relationship." Winter, 914 S.W.2d at 541-42.

Implied contractual indemnity, or "indemnity-in-fact," arises from the contractual or legal relationship of the parties. Stiver Mktg., Inc. v. Performance Business Forms, Inc., No. 01-A-01-9108-CH-00276, 1991 WL 254564, *4 (Tenn. Ct. App. Dec. 4, 1991). While a contract

---

[4] To the extent that Pittway contends that Allied's failure to join Beyer as a defendant in this action creates unfairness in that the loss of recovery from Beyer will result in a diminished recovery for the creditors of the company's bankruptcy estate, its argument, in this instance, must be rejected. Allowing a contribution claim to proceed between Pittway and Beyer would have no effect on the recovery of Allied's bankruptcy estate as the estate is not a party in this action.

9

between parties may be silent as to indemnification, an obligation may be imposed where the party from whom indemnity is sought breached a contract or engaged in tortious conduct in performance of contract obligations. See Winter, 914 S.W.2d at 542 ("In the absence of an express contract, an obligation to indemnify will be implied only if the party from who indemnification is sought breached a contract or engaged in some other related tortious conduct."); Stiver Mktg., Inc., 1991 WL 254564 at * 4 ("implied contractual indemnity may be claimed where a breach by the indemnitor of its contract with the indemnitee caused the latter to be subject to a liability for a breach of contract with a third party."); First Am. Bank v. Woods, 734 S.W.2d 622, 632 (Tenn. Ct. App.1987) ("Where there is a direct contractual relationship, there may be an implicit right of indemnification arising out of an obligation to indemnify for negligent conduct in the performance of the contract."). Implied indemnity may also arise from the legal relationship of the parties. See Stiver Mktg., Inc., 1991 WL 254564 at * 3 (noting that a principal, held liable for the negligent acts of its agent solely because of their legal relationship, has an implied right to indemnity against the negligent agent).

     Prior to the Tennessee Supreme Court's adoption of comparative fault in McIntyre, the Tennessee courts also recognized implied indemnity on equitable grounds where "justice and fairness demand that the burden of paying the loss be shifted to the party whose fault or responsibility is qualitatively different from the other parties." Winter, 914 S.W.2d at 542. This rule contemplated comparison of fault among joint tortfeasors and held that a tortfeasor guilty of only "passive" negligence could recover from a tortfeasor guilty of "active"negligence. Owens, 915 S.W.2d at 433. Following McIntyre and the adoption of comparative fault, the Tennessee Supreme Court has held that "there can be no claim for indemnification based on active-passive negligence

because that distinction is subsumed into the doctrine of comparative fault . . . However, where implied indemnity is based on the legal relationship between the parties, the traditional principles of indemnity continue to apply." Id. at 434.

In the instant action, Allied asserts four causes of action against Pittway based on breach of warranty, breach of contract, fraud and intentional misrepresentation, and negligent misrepresentation.[5]  In Pittway's third-party complaint, it asserts claims against Beyer for contribution and indemnity on the basis that fraud and negligence committed by Beyer, rather than any act by Pittway, were the cause of Allied's injuries. Pittway does not contend that there is an express contract of indemnity between it and Beyer. Further, because there is no contractual or other legal relationship between the parties, an obligation by Beyer to indemnify Pittway cannot be implied on the basis of a breach of contract or commission of a tort in performance of contractual obligations which, in turn, subjected Pittway to liability. Thus, the question before the Court is whether, under Tennessee law, an implied obligation to indemnify can arise between Beyer and Pittway in the absence of a contractual or other legal relationship. In other words, what type of relationship is required to support a claim for indemnity? In response to the instant motion, Pittway maintains that general principles of indemnity support its application here. Specifically, Pittway maintains that because it is asked in this action to answer for injuries to Allied caused solely by Beyer and not through any wrongdoing on its own part, Beyer should, in equity, be forced to make good any loss it suffers. (Def.'s Mot. at 10.)

In Starr Printing Co., Inc. v. Air Jamaica, 45 F.Supp.2d 625 (W.D. Tenn. 1999), this Court addressed the right to implied indemnity in the absence of a contractual relationship between the

---

[5] Allied's claim for product's liability was dismissed by order entered October 10, 2003.

11

parties.[6] Starr Printing Co., Inc., 45 F.Supp.2d at 632.  In Starr, AJV, an airline which marketed vacation packages, entered into contract negotiations with Moore, a printer, for Moore to print its travel brochures. Id. at 628.  Due to a dispute concerning the terms of the contract, Moore indicated to AJV that it could not complete the job and was releasing the print job to one of its vendors, Starr. Id. at 628-29. After communications with AJV, Starr printed the brochures and subsequently demanded payment. Id. at 629.  When AJV refused payment, Starr initiated suit claiming that AJV breached a contract between them by failing to tender payment for the travel brochures. Id. at 628. AJV, who denied the existence of any contract between it and Starr, subsequently initiated a third-party action against Moore alleging breach of contract, indemnification, fraud and respondeat superior liability. Id.  In rejecting AJV's claim of an implied right to indemnity based on the relationship of the parties, the court explained that:

> AJV is not defending itself against allegations arising from the wrongful actions of Moore and for which Moore should be responsible. Instead, AJV is defending itself against allegations that *it* accepted a service provided by Starr and refused to pay for it.

Id. at 632 (emphasis added).  Because it was not a "necessary element of Moore and AJV's relationship that Moore should have to pay Starr for the value of brochures AJV received," Moore had no obligation to indemnify AJV. Id.

In Morse/Diesel, Inc. v. Provident Life and Accident Ins. Co., Nos. 97-5899, 97-5926, 1998 WL 739886 (6th Cir. Oct.8, 1998) (table), the Sixth Circuit Court of Appeals applied a similar logic to find that a relationship sufficient to support an implied indemnify obligation did not exist between

---

[6] In both Starr Printing Co. and Morse/Diesel, Inc. (See *infra* at p. 7-8) contractual relationships existed between the parties.  However, because a right to indemnity is not implicit in every contract or contractual relationship, the analysis of the relationship required to sustain a claim for indemnity is instructive.  See  42 C.J.S. Indemnity § 31 (noting that a right to indemnity is not implied in every contract or contractual relationship).

two parties. Morse/Diesel, Inc., 1998 WL 739886, at *5-6. In Morse, the plaintiff contracted to build a building for Provident. Id. at *1. Morse subsequently subcontracted with Martin to supply and install superstructure concrete for the building. Id. Martin's portion of the work took much more time and material than it had anticipated and, as a result, it sued Provident, Morse, and others for the delay and expense it suffered. Id. Specifically, Martin asserted causes of action against (1) Provident for breach of the subcontract; (2) Provident and Morse for negligent misrepresentation; (3) Morse, in contract, as a third-party beneficiary of Morse's contract with Provident; (4) Morse for negligence; and (5) the architects of the project for negligent supervision. Id. Subsequently, Morse filed suit against Provident for indemnification for attorney's fees incurred in the Martin lawsuit. Id. Because the contract between Morse and Provident did not expressly address indemnification, the Sixth Circuit considered whether an indemnification obligation was implicit in the parties' relationship. Id. at *5. In rejecting the indemnification claim, the court reasoned that

> [t]o show a relationship that would support indemnification . . ., Morse must demonstrate that it was defending itself against allegations of the tortious acts of Provident. But Martin's third cause of action does not allege tortious action on the part of Provident. It is a claim for damages as a third-party beneficiary under the Morse-Provident contract. Provident's involvement in Martin's third cause of action is not as a tortfeasor, but as a party to the contract that defined the duties that Martin alleges Morse breached. Morse is not entitled to prevail, not because of the unproved allegations of its own fault, but because it was not defending itself against a claim of Provident's *wrongdoing*.

Id. at *6 (emphasis in original) (internal citations omitted).

In the absence of any contractual relation between the parties, the relationship is analyzed in the same manner. For example, in Owens, a restaurant patron who was injured when the stool on which he was seated collapsed brought an action in negligence against the restaurant based on its failure to maintain a stool in a safe condition and failure to warn the him of its dangerous

13

condition. Owens, 915 S.W.2d at 422-23. Subsequently, the restaurant brought an action for contribution and indemnification against both the manufacturer and distributor of the stool on allegations of negligence, strict liability, and breach of implied warranty of merchantability. Id. at 423. In discussing the restaurant's claim for indemnification, as noted above, the court held that an obligation to indemnify could not be based on the basis that the restaurant was only guilty of passive negligence while the putative indemnitees were guilty of active negligence alone. Id. at 434. Finding no "legal relationship" between the parties, the court dismissed the restaurant's claim for indemnity. Id. Beyond the fact that there was no contractual relationship between the parties, as in Starr and Morse, there could be no implied indemnity because the restaurant was not held to answer for the wrongdoing of the manufacturer and distributor. Rather, it was forced, in the lawsuit with the patron, to defend *itself* against allegations of *its own negligence* in maintaining the premises and warning patrons of dangers therein.

Applying the principles of the above cited cases to the instant matter, the Court concludes that Pittway has not stated a claim for indemnity under Tennessee law. Allied's claims against Pittway are for breach of warranty, breach of contract, fraud and intentional misrepresentation, and negligent misrepresentation. None of these claims are based on the alleged wrongdoing of Beyer, but rather, state allegations of Pittway's wrongdoing. If, as Pittway contends, Allied's bankruptcy is the result of Beyer's fraud and negligence, under comparative fault, it will be entitled to prove that at trial and indemnity will not be required. However, because it is defending against allegations of its own wrongdoing, for which Beyer is neither contractually nor legally responsible, Pittway's claim for indemnity must be DISMISSED.

## CONCLUSION

Based on the foregoing, the Third-Party Defendant's motion to dismiss is GRANTED.

**IT IS SO ORDERED** 15th day of March, 2006.

                                    s/  J. DANIEL BREEN
                                    UNITED STATES DISTRICT JUDGE